1ST CIRCUIT COURT OF APPEALS

GERALDINE MILLS, M.D.
Plaintiff

vs C.A.NO: 04-393S

PARA-CHEM d/b/a PARA-CHEM SOUTHERN,INC., PARA-CHEM STANDARDS DIVISION and PARA-CHEM Alias,
a foreign corporation
Defendants

PLAINTIFF'S APPEAL TO THE 1ST CIRCUIT COURT OF APPEALS

The instant appeal is filed from an order of the United States District Court for the District of Rhode Island to dismiss the toxic tort action and Personal injury case of the Plaintiff, Geraldine Mills, M.D., filed against Defendant Para- Chem Southern, Inc ( heretofore known as " P-Chem"); case 04-393S dismissed on May 2, 2005.

Product Magnum Plus Gold 4099 manufactured by P-Chem was Used in the installation of a carpet at the medical office of Plaintiff on July 18, 1996 ( this information unknown to Plaintiff until August 31, 2001). The composition of P-Chem's product (heretofore known as "Gold" ), was not known until on or about September 6, 2001. The instant complaint was filed in the Federal District Court of Rhode Island on or about September 6, 2004. P-Chem requested and received by stipulation an extension of time to answer

the complaint through December 11, 2004.

At the time of the carpet installation and at all times henceforth, the Corporation known as State Sales, Inc. (carpet installers), denied ever having used any adhesive/glue. Even during court allowed and ordered sampling done On May 10, 2001, Charles Muscatelli, spokesperson for State Sales, stated that the glue seen on the cement sub-flooring had been from the original carpet installation more than thirty years prior.

This appeal is brought for the following reasons with 1) reservation For Plaintiff to be afforded opportunity to address further issues at times henceforth, 2) The Discovery Rule, 3) Statute of Limitations- when does it begin to Run, 4) issue of the Rule 50b Motion, 5) Plaintiff was denied all due process all supporting evidence ( includes all data results), all equal protection of law, 6) misrepresentation and concealment by Defendant regarding composition of Gold product, 7) RI State Judicial System not addressing the issue of a court ordered subpoena on Suvann Kay ( individuals doing actual carpet installation with adhesive) which went unanswered.

DISCOVERY RULE

The first issue is that of discovery. This involves the knowledge and Understanding of the differences between an acute and latent injury. One simple incident will illustrate this difference. Recently new phone books were delivered to the Plaintiff's home. They had been placed in a den. On that particular day the

Plaintiff frequented that den on many occasions without any difficulty. Not knowing of the presence of these new books, the Plaintiff began experiencing headache and a general feeling of unwellness when entering the den- feelings that were not so experienced prior to the delivery of the phone books. While trying to isolate the problem it was discovered that a very strong odor emanated from the bag in which the books were delivered. New ink was " outgassing" from these books. A lowered tolerance to this type of "outgassing" is one of the most significant and recurrent responses of those who have been environmentally injured.

It is patently absurd and medically unsubstantiated for anyone inclusive of Defendant P-Chem, to state that this Plaintiff's injury ( or anyone else with similar injury), took place on one particular date of July 19, 1996 ( Defendant states the 18th which is not the correct date). This type of injury cannot be likened to a motorcycle accident in which one loses a limb. Plaintiff's injuries were acute and latent. This is the way in which toxic exposures affect the human body. If this Plaintiff had just entered the office on July 19, 1996, had the acute symptoms but never returned to the Office again, there would not have been a lifelong injury (latent). This type of outcome would have been impossible for the Plaintiff to have predicted or even speculated. In Support of this are all those who told her to remain out of the office for only the weekend and even carpet manufacturer, Beaulieu Inc, in writing that it would be safe after just 48-72 hours.

The District Court of RI states ( @ pg 10 decision), that it is the "discovery

that one has suffered an injury not the discovery of the identity of the party allegedly responsible for causing the injury, citing Anthony and Renaud cases. On August 31, 2001 Plaintiff became aware that P-Chem existed but had no knowledge of what their product contained. It could have turned out to be a water-based adhesive as the Defendant claims on their MSDS sheets for GOLD- sheets that they distribute to the public consumer per request. This Plaintiff did not know that she had suffered an injury from adhesive made by P-Chem or adhesive made by any other company at any time prior to September 6, 2001. It was mere speculation that the carpet had to have been installed with some products like adhesive. This speculation was denied by the Defendants involved at all times including August 31, 2001 to the present date.

Further, the Court agrees with P-Chem's statement, "by Plaintiff's own admission she knew of the alleged injury and the basis of the alleged cause of action in the summer Of 1996." ( Decision @ pg 2) If this Plaintiff " knew" all this in the summer of 1996, why would she have not been tested for this until many years later and why would the test results be even higher many years after that? It is more ominous and illogical at best, for the court to have stated that they cannot credit " bold assertions and unsupportable conclusions (@pg 5 De), all the while knowing of the Data Chem results, ( September 6, 2001 which are on the public record in RI state court), and then agree with P-Chem that this Plaintiff " knew" of her injury. ( Decision @ pg 10) The Plaintiff in summer of 1996, only knew that each time she entered her office after the new carpet installation, she got the same symptoms.

When assuming new tenancy at another location, a Shelia Marcotte from the RI DOH evaluated the new office and wrote to Plaintiff," if you should have any new air quality problems contact us through....." Even the DOH did not inform the Plaintiff that she was at risk for having taken her office belongings. In fact, the DOH's own IH Robert Weisberg, reported his findings of air quality and carpet testing of the original office ( done just weeks after the new carpet was installed) . The Plaintiff was not informed of the results by verbal or written communication forcing her to contact Weisberg by phone. He answered by phone that " nothing was found." A written Report was not forwarded to Plaintiff until her complaint was filed many years later. Weisberg had only ordered testing for styrene and 4 PC; no other VOC's were tested for. Yet five (5) years later, the very same carpet contained many many VOC's. Even the RI Department of Health and their Industrial Hygeinist failed to inform this Plaintiff of something known as the " residue effect." This can be far worse than the original toxic agent. Marcotte did not notify the Plaintiff that the air quality was poor and in fact toxic in the new office setting due to the office belongings brought from the original office.

Point of discovery rule exceptions to limitations statutes began as ways to protect prospective Plaintiffs from unknowingly having cause of action barred. Until fully aware of the injury and its cause, one cannot bring a cause of action. This was done per legal standard and thus the Defendant would deny that any adhesive was used in this instal-lation- a question for the jury. Federal Court (1976) allowed separate causes of action for Distinct latent injuries. Goodman vs. Mead 3rd Cir 1976; again applied in Kelly vs Johns-

Manville Sales Corp 1984. Plaintiff cannot bring a cause of action until they are aware of the injury and its cause. Hoarseness, airway and skin irritation were not part of the Acute injury. Intolerance to many substances as deodorizers, plastics products, fabric softeners, many perfumes, detergents and hosts of other compounds, was not known on July 19, 1996 nor in 1997, 1998 or 1999 or when the toxins ultimately cleared from Plaintiff's circulation more than five years after the final exposure took place. As these conditions were not present in the acute injury just as further immune disregulation was not; so is even further disregulation which ultimately can present as cancers in the future. (See Future Illness)One exposure on July 19, 1996 could not be a cause for cancer ten years down the road. In Martinez (1980), the court's own analysis is " .... in these days of drugs with wondrous unintended, unanticipated and frequently long-delayed side effects..." The Defendant's product did not " conform to the state of art." Technology at the time of its manufacture could have made a safer product. This is addressed under misrepresentation and concealment.

STATUTE OF LIMITATIONS

RI District Court decision cites P-Chem as having stated, " Plaintiff's Injury occurred on or about July 18, 1996, and for this reason the Plaintiff cannot meet the statute of limitations of three (3) years." As stated above, this injury cannot be likened to an acute loss of limb or even to a lethal toxic dose (LD50) of a chemical. The symptoms on the first day of exposure were "acute" symptoms. After a six hour inhalation of vapors on July 19, 1996, Plaintiff experienced symptoms as dizziness

and a scratchy throat. Her secretary and her secretary's daughter had other symptoms. These acute symptoms abated after several hours remaining out of the premises. These symptoms did not alert, forewarn, or even predict an outcome many years later to a condition known as TILT or " toxicant induced lowered tolerance." In support of this fact, is that even those physicians immediately notified of Plaintiff's concerns advised her on July 19,1996 to " stay out of the office for the weekend." On July 23rd the RI DEM told her they could not get involved because the Plaintiff, " did not own the property." Carpet manufacturer, Beaulieu, Inc., wrote that the problem of vapors would " outgas" in 48-72 hours. Muscatelli for State Sales stated it would only require that individuals stay out of the premises for at most 24 hours to be safe.

In October 1996, out of the office, having moved to a new location, Plaintiff still continued to be symptomatic. Board certified RI Neurologist, Cardiologist, and a Boston Board Certified Gastroenterologist all cleared Plaintiff by stating that the in-citing agent was no longer affecting Plaintiff and that " full recovery from the symptoms was expected." Plaintiff continued to work (while in the new office location), in the Presence of all the office contents that had been exposed to the ambient vapors during the carpet/adhesive installation while in the new office location. The complaints changed in the new location and as the years passed, a new condition arose that is best explained scientifically proven as " toxicant induced lower tolerance," theory ( Ashford, Nichoas,PhD, JD Chemical Exposures, MIT) Statute of limitations in this case does not run from July 18 or 19, 1996. Even if one were able to predict a latent injury it would

have been mere speculation. It is speculated today that leukemia could be a final result of the injuries so incurred because Volatile Organic Compounds (VOC's) do cause cancer. To have claimed this in 1996, 1999, or even today is mere speculation. However, this case brought on appeal would cover the question of whether damages can be awarded for what is a probability of future injury and the fear of its appearance.

VOC's affect the human body just as medications and drugs do. They follow A dose response curve in that the higher the dose and the longer the time exposed, the more severe the injury. There are some situations which are lethal by exposure to one dose as referred to above as LD50 of the drug or substance.

Immune disregulation is the latent chronic injury which can result from long Term exposure or a near lethal dose. It does not occur for many years after the peak levels are determined in the body. It is fact that in many cases, Plaintiffs never know or Learn until all statutes of limitations run out, remaining victimized by the judicial system. Traditional physicians do not know or are just being educated to the Affects of our industrialized society. We as a society have new laws governing car Emissions; new laws banning cigarette smoking in all public places. Why? It is VOC vapors just like those emitted from indoor renovation products as synthetic carpets and VOC-based adhesives.

VOC's are again like drugs and medications by being composed of hydrogen and carbon atoms so they must be treated the same in litigations. They use the same routes of entry into the human body- inhalation, ingestion, absorption; they affect the body in the

same way by crossing the blood-brain barrier to affect the central nervous system and affect all systems as cardiovascular, gastrointestinal, joints; they are excreted from the body in the same way- over time and through the urine, feces, respirations, and sweat.

The same regulations placed on cigarette smoke and car emissions has to be placed on products causing indoor air pollution, for without which a significant part of our society will be harmed without restitution.

Any insult to the body is injurious as inhalation or substance X causing burning and watery eyes, headaches. However, these symptoms may not recur with some other similar substance unless some underlying disregulation has taken place. This takes time and prolonged exposures.

On September 6, 2001, Plaintiff learned that the composition of the adhesive GOLD contained many VOC's as well as high levels of styrene. If the results were "0" as the MSDS sheets printed by Defendant read regarding GOLD, this case could not have been brought. The date of discovery of the injury due to this adhesive was September 6, 2001 and this case was brought within the three year statute of limitations of that date. Again, it was not just an identity of a corporation that was found in 2001 but It was that an injury occurred as a result of the product GOLD. Even between the dates of August 31, 2001 and September 6, 2001 there was no proof except mere speculation which would have been laughed out of court.

MISREPRESENTATION AND CONCEALMENT

There are a whole host of issues with gravity that must be looked at here.

They include failure to warn, misrepresentation to the public consumer, harm with Intent, concealment, fraud, and others. A much safer product could have been made at all times by the manufacturer of GOLD. Worse that this however, is the fact that MSDS sheets emphatically state that there are "0" VOC's in this product made by the Defendant. Alleging one's product is water based with no VOC's is not conforming To any state of art. Breaching duty as in Woodhill vs Parke Davis and Co(1980) was Failing to warn adequately- misled public into belief that their product is safe (Halphen vs Johns-Manville 1985) -again a question for the jury as to, " is marketing a product as such done with conscious disregard of rights and safety of others?" (Ghiardi Kircher Punitive Damages 1981). The Defendant has deprived the Plaintiff her right to her health by their distribution of a product without warning and with concealment, fraud, and mis-representation.

It has been conceded in Feldman v Lederle Labs (A-70 July 30, 1984), that many products have been conceived and manufactured by Defendants as they were intended. Examples are asbestos for insulation and Agent Orange as herbicide and GOLD as an adhesive. Though in the issue of intent - what the product was supposed to do, one must look at the facts. Here the fact is that P-Chem knew about the Gordan case wherein the GOLD product exploded when just being close to a heater. At the time of that case in the 1980's they were aware of the dangers of their product, if not so before. They have had over twenty years to change their MSDS sheets to vindicate themselves. However, in Feldman the court states, " when the strict liability defect consists of improper design or warning, reasonableness of the defendant's conduct is a factor in determining liability.

Once the Defendant's knowledge of the defect is imputed strict liablity becomes almost tantamount to negligence. Design defect and failure to warn are significant and relevant factors in the measure of reasonableness of conduct.

The court furthered it was the Plaintiff's contention ( @pgs 12-13), that this cause of action, " should not accrue until the investigation is complete.") Plaintiff has stated at all times it accrues from Discovery of The Cause for Injury (Goodman vs Mead and Kelly vs Johns-Manville id). The court cannot have it both ways and needs to be held accountable for its own actions and statements. As the court states @ pg 10 Mem "...Plaintiff's own admission....Making bold assertions and unsupported claims..." Here the court refers to what they claim are not discoveries by the Plaintiff but just alleged un-supported claims. Yet on the other hand, the court bases its whole reasoning for dismissal of Plaintiff's case on the fact that the statute of limitations had run, that Plaintiff " knew" When an how she would be permanently injured and that she " knew" allegedly on July 19, 1996. By the RI DOH's own admissions in 1996, there were no VOC's in either the air or carpet testing. Though the Plaintiff was able to prove this testing was inaccurate and most assuredly never even done, this did not take place until 2001. Without the results of September 6, 2001 by the District Court of RI, it was only mere speculation By this Plaintiff which again would never have held up in any court- again by the Defendant and court's own admission.

When the Plaintiff became cognizant of the latent injury, when the Plaintiff Became aware that the very same substances found in her urine/blood were in GOLD

-that is when the statute of limitations began to run.

The court cited Renaud denying Plaintiff's case because she did not state in her complaint that Fisher concealed the existence of the cause of action. This again can be likened to the court's statement that it is not the identity of the party in questions that Matters, but is the discovery that one has suffered an injury (@pg 10 Mem). Using The RI Court's own argument, knowing the actual name of the party ( its identity by name), was " not necessary nor important." In Renaud there was no John Doe being filed against. There was not even a hint of another party that was speculated to have been involved - therefore the court is comparing " apples to oranges." It is further question for the jury as to whether P-Chem knew or did not know that they were John Doe, whether they did conceal their identity. Needless to say, it is by the RI Court's Own admission, " it is not the discovery of identity of the party that is a question here." It is that a latent injury has occurred that was not nor ever could have been known in 1996 by the Plaintiff, for which the Defendant does now have an identity established. It is question now for the jury to decide if this particular Defendant's product caused the latent chronic injury of this Plaintiff.

As to concealment- there is concealment on the part of this Defendant P-Chem As stated above, a question for the jury as to identity but also as to the composition of their product. It is not a harmless, water-based product but is replete with VOC's which have caused not only this Plaintiff's injury but that of others as Gordon(1985) when GOLD was too close to a heater, it exploded. This would not happen with water-based adhesives.

P-Chem is marketing a product as " safe" and devoid of all VOC's a travesty to all public consumers. Under Restatement of Torts 402 (b) " manufacturer...misrepresen-Tation...even if....fraudulent...." Hunter v Zogarts 1975 and citing McGovern Toxic Substances Litigation 4th Cir 1982 "...the court's willingness to make discovery rules is for the purpose of avoiding strict application of exposure rules to plaintiffs." This Defendant has violated Federal Hazards and Substances Labeling Act (Steagall v Dot Mgf Corp 1969) Restatement (Second) of Tort 15 " ....a chemical exposure that may alter the body and be actionable, suffices...."

RES JUDICATA

Res Judicata does not apply in this case for 1) one could not bring this case earlier based on mere speculation 2) the chemicals for which this product and the latent injuries are resultant were not addressed in the other case and were not known then 3) this claim is against P-Chem for depriving Plaintiff's right to her health by their distribution of a product without warning and with misrepresentation.

Barring by Res Judicata in this case would so prejudice Plaintiffs in giving Authority to those who choose to conceal information to further injure the public. Again as stated, it is a question for the jury to determine whether the marketing of GOLD is and was done with conscious disregard of the rights and safety of others. (Ghiardi 1981).

Res Judicata precludes relitigation of ENTIRE causes of action. In the instant case the other Defendants are not involved; this is about a completely different product and its identity of composition - not the identity of the manufacturer which is the basis

For this case. It is not unlike the use of offensive collateral estoppel to allow Plaintiffs the opportunity to prove whether P-Chem knew or should have known the dangers associated with its product GOLD.

FUTURE ILLNESS

If wrongful conduct produces a reasonable fear of developing disease (medical or emotional) in the future, such distress caused by the fear is compensable even if no actual physical impact took place (Molien v Kanser Foundation Hosp 27 Cal. 3d 916 1980). The very inhalation of toxic material is all that need be to constitute a necessary Insult (regardless of impact rule). Even with the most restrictive of impact rules applied recovery for emotional distress and fear of future illness should be obtained. Further, Medical costs for tests revealing Defendant's wrong ( both Plaintiff's medical lab work and testing results of Defendant's product) should be covered if a Physician so testified the tests were "reasonably required." In the instant case, there is 100% confirmation that substances in adhesive of P-Chem affected Plaintiff. (Hendrix vs Raybestos Manhattan-Inc 976 F.2d 1492 11th Cir 1985).

DISCOVERY, DUE PROCESS, EQUAL PROTECTION OF LAW

In Mills vs State Sales, Inc., Beaulieu Inc., Nahabedian et al, both sides were to rely heavily on expert testimony. This Plaintiff was denied all due process to Rule 26 (b) (4) F.R.D. which allowed for discovery by both parties. The Defendants adamantly refused any facts, opinions, documents let alone work product of their expert witness a RI Hospital ER Physician who had, more specifically, no expertise in Environmental Medicine ( no training or field work in toxic carpets, adhesives). Qudrine vs Sikorsky

Aircraft Div 74 F.R.D. 594 (Conn 1977). In Re Japanese Electronic Products Antitrust Litigation 3rd Cir 1983 proper standards here likewise, were not applied in granting a 50b Motion- again violating due process by being incorrectly applied in Mills vs State Sales lower court Justice Vogel. (Goldberg Supreme Court Justice admitting to Daley Beaulieu counsel, " we overturn cases on just this incorrect application of a Rule 50b Motion time and time again in this court, don't you know that Mr Daley?")

Courts should and do err generally on letting in the proffered evidence. Patently absurd and illogical it was to deny evidence (Data Chem results) all the while denying use of a model (simply allowing the evidence would have precluded any need to use a model). Expert Kenneth Reed, PhD., for Plaintiff, had been expert witness in many Carpet cases both in state and federal courts- never before having his testimony denied. US vs Lopez 543 F.2d 1156 5th Cir 1976 Scope of Rule 702 extends to anyone with Specialized knowledge or experience. Reed had both. Even in Rule 704 on giving Opinion or influence in civil cases, it is an ultimate issue to be decided by a trier of Fact. It was not - all flaws of legal question with regards to the case. It was legal Error for the trial court to substitute its judgment or reliability for that of experts in The field (Justice denies toxins by inhalation warrant serious attention because " one Cannot see these vapors like you see spores"). Lower Court Justice Vogel also denied the scientific principal of lingering residue effects of vapors in porous items- as also Seen with cigarette smoke- denying this analogy from being made. In Re Japanese 106 S. Ct. 1348 Third Cie (1986) No factual inquiry was done by the trial court. " There is no discretion to forbear from making this inquiry and finding." Lewis vs Rego Co 757

F.2d 66,74 (3rd Cir 1985)

Exceptions to hearsay rules are made when experts in the field rely on studies of this kind as epidemiologic conducted by even governmental bodies ( Kelm vs Proctor & Gamble Co 724 F.2d 613 8th Cir 1983).

This is at issue, that "NO FAIR and FULL LITIGATION" took place in the prior action. The competence and expertise of counsel was in question as well as the availability of new evidence and the forseeability of future litigation. McCarty vs Johns Manville S.D. Miss 1980 There were due process concerns with denial to a jury trial.

Since there has been no trial of peers on the instant issues, this is not needless litigation- there is a question which is in the interest of judicial economy and which will preclude any further cases for as yet unidentifiable injury- with this case going to trial. Wilson vs Johns Manville Sales Corp 684 F.2d 111 (D.C. Cir 1982 is well established leading authority in subsequent latent injury cases with attention focused on statutes of limitations not on splitting causes of action ( this case with no trial for carpet installer and subcontractors) but recognized separate discovery dates for distinct latent injuries. The court stressed here, evidence in latent injury litigation tends to develop over time rather than disappear over time. If Rules of Law were to force someone to seek Damages based on speculation and probability of manifesting disease or latent injury in the future, they would never prove likely of success. So it is in the common public interest that the fair recovery outweighs Defendant's interest in repose: as adopted in Colby vs Eli R Squibb & Sons Inc (Kan 1984) and in Place vs Ortho Pharm Corp 1984.

It is the Sentilles decision wherein the courts concluded that mere probability testimony by medical witnesses is sufficient to submit the issue of causation to a jury of peers. A mere " alleged" and " speculative" and even " coincidental" relationship Between cause and injury is not sufficient to submit a case to jury. Here one must Distinguish between the " possible" and "probable" causes. The possible cause only becomes probable when " in the absence of other reasonable causal explanations it becomes more likely than not that the injury was a result of its action In the case of Conway v Blackfeet Indian Developers, the plaintiff was favored because the court stated, " ...until they have explored further no one will have affirmative evidence of What may cause MS to be symptomatic...this leaves the claimant in the seemingly impossible position of being required to prove proximate causation when there is not direct medical evidence on this point." Since the disease manifested itself immediately after the trauma the court determined probable causation existed. Other similar decisions are seen in Koller vs Richardson-Merrell Inc Here the Defendant was denied summary judgment even though the Plaintiffs were unable to prove the mechanism by which the drug caused birth defects or that the child's defects were not caused by something else.

In the instant case, the Defendants by their own admissions, state that this Plaintiff's injuries all occurred on July 18, 1996 which is not based on fact. One of Their own arguments for dismissal of this case is that the injuries were " immediate" And therefore the Plaintiff cannot bring suit many years later for the statute had run. Facts are that there were immediate injuries which did not forewarn or alert anyone

to the latent injuries that resulted.

In the instant case causation being "probable" is met by all the following criteria: 1) strength of association 2) dose response relationship 3) consistency of association 4) temporally correct association 5) specificity of association 6) coherence with existing information. One must remember that the case Mills Vs State Sales was decided in favor of the Defendants on a Rule 50 b Motion which were always overturned in cases as these per Justice Goldberg's own admission. She then attempted to justify the decision to change the rules and laws in this Plaintiff's case based on the abuse of discretion and frank denial of scientific methods, epidemiologic data, statistical associa-tions and populations studies ( including Data Chem results with 100% confirmation of The causal association in this case) by the lower court Justice Vogel.

The decision of causal relationship MUST be based on an evaluation of ALL the available information. When appropriate evidence is reviewed and the issues are addressed only then can all benefit. Only former Supreme Court Justice Robert Flanders allowed this Plaintiff to have her supporting evidence placed on the public record. But unfortunately this was Justice Flander's decision by the " luck of draw" wherein he was given the case of Mills vs the RI Medical Board and Bruce W McIntyre. This Plaintiff has been kept from her livelihood by the RI Medical Board and McIntyre for reason of their questioning Mills' mental status and without ANY evidence to support their " conclusions" have labeled her as having a " mental disorder." At her license hearing a Pediatrician Robert Eden, M.D. of RI Hasbro Children's Hospital (RI Hosptial) implied and in deposition outright testified that he believed Mills had " paranoid schizophrenia."

In part he made this conclusion based on his being told by one parent that Mills was " irrational and bizarre" to believe that her office buildings were contaminated. When Dr Eden was asked if he had any evidence or knew if Mills' buildings contained hydro-carbons, he answered, " I don't know." He further answered that he felt Mills should not practice because of the " possibility that her judgment may be impaired." The RI state court decision as written by Justice Daniel Procaccinni then read, " Mills herself testified that DEM did not confirm the contamination to her building." This was not factual, taken out of context of Mills' one statement that DEM did not inform Mills At the closing on her purchase of one building that they knew for four and one half years of the pollution to that building. Justice Flanders resigned from the RI State Supreme Court because of " bigotry, corruption, and discrimination" for which he Could no longer " dissent" with his fellow Justices. The RI Medical Board then was represented by counsel- former Attorney General Sheldon Whitehouse ( has brought lead cases against paint companies from 110 years ago) who denied Mills her supporting evidence - a case known as Sheldon Whitehouse vs. Speedy Oil Petroleum, Inc. Because this Plaintiff was injured by this Defendant's product, she had become intolerant to levels of VOC's and was able to later determine her office purchase as contaminated. Plaintiff monitored the basement ambient air ( as DOH's Weisberg should have done in the carpet/adhesive situation) and found a 12,000 gallon underground storage tank leak from neighboring Speedy Oil.

In looking at the entire situation, it is obviously apparent that no due process and equal protection of law has been afforded this Plaintiff. This must be overturned

and this appeal must be allowed. The damages from this instant case go much Further than just personal injury but are integral to Plaintiff's loss of livelihood and further slander. Plaintiff has been evaluated repeatedly by Psychiatrists, forensic legal Psychologists, Medical physicians and taken testing for both her mental status as well as physical status. She has been cleared as competent to practice medicine with no psychopathology found.

This Plaintiff became an Environmental Physician, learning from those who saved her, before it was too late. To deny this appeal is to deny all those suffering from such injuries the right to their health. There is a grave lesson to be taught here and one that all traditional medical doctors need to know. There are only about 500 Environmental Physicians practicing in the United States. They are trying to educate in the Teachings of Dr Randolph (1950's). A half a century has elapsed and still those traditional physicians have no clue as to why asthma, ADHD, immune disregulation is on the rise. It is not just lead, asbestos, cigarette smoke and car emissions that needs to be at the forefront of the judicial system but all products with VOC's, pthalates, formaldehyde and more.

CONCLUSION

The statute of limitations is three (3) years from the date of discovery of an injury. A Plaintiff cannot be compelled to bring a cause of action until he/she is FULLY aware of the injury and its cause without encountering res judicata challenges. In this

Instant case, the latent injuries were not known until many years ( as supported by the medical records) after the Plaintiff's blood levels peaked and fell. A headache experienced on July 19, 1996 did not forewarn this Plaintiff or any of the Physicians that Saw her, nor any of the Defendants involved in the carpet installation, as to what the Plaintiff would endure ten years later or is to endure in the future. A one time exposure cannot, unless it is a near LD50 (lethal) dose, cause a permanent injury as immune Disregulation or TILT. If the product in question, GOLD, had been reported on the date of September 6, 2001 as having "0" VOC's this case would not have been brought-could not have been brought with any merit. But this was not the case, GOLD does Contain many harmful, toxic substances and in very harmful amounts. Without these test results, without the identity of the company known to obtain GOLD to get these results, there would have only been speculation which would have been laughed Right out of court ( Martinez-Ferrer v Richardsoon-Merrell Inc 2nd Dist 1980).

Time is required to determine the full extent of injury in toxic tort case; one often not learning of the injury until statutes run, leaving most victims unfortunate Burning watery eyes are acute symptomatic injuries but a lifelong " allergy" or Lowered tolerance to styrene, plastics is not an " extension" of burning watery eyes. Nor is this " allergy" an entity that could be or was known in 1996. From 1976 on, Federal Courts do allow separate causes of action for distinct latent injuries. Awareness of the injury alone would not even suffice in courts but injury and its cause is necessary. It is question for the jury and only after they hear the experts to decide.

It would be a miscarriage of justice to deny this case from jury of peers for it 1) meets the statute of limitations from date of DISCOVERY of an injury From the product GOLD 2) Plaintiff was denied due process and equal protection of law in her case against Beaulieu Inc, State Sales, Nahabedian (landlady) et al and 3) Barring this case to trial would give further authority to companies like that of P-Chem to continue such harmful practices lulling the public into a false sense of security in the purchases of such products.

Respectfully submitted by,
Plaintiff, prose
Geraldine Mills, M.D.

Geraldine Mills, M.D.
191 Squantum Drive
Warwick, Rhode Island 02888
4010463-8433

CERTIFICATION

I hereby certify that a true and accurate copy of the within was hand delivered to counsel for the Defendant Para-Chem, Jeffrey Gladstone on this 30th day of May 2005 at his office of 180 South Main Street Prov R.I. 02903.